[854 NE2d 464, 821 NYS2d 142]

In the Matter of JOHN L. EADIE et al., Appellants, v TOWN BOARD
OF THE TOWN OF NORTH GREENBUSH et al., Respondents.

Argued June 8, 2006; decided July 5, 2006

## POINTS OF COUNSEL

*Law Office of Marc S. Gerstman,* Albany (*Marc S. Gerstman* of counsel), for appellants. I. Appellants timely commenced their challenge to respondent Town Board of the Town of North Greenbush's compliance with the State Environmental Quality Review Act conducted in connection with the legislative act of rezoning. (*Matter of Village of Westbury v Department of Transp. of State of N.Y.,* 75 NY2d 62; *Matter of Best Payphones, Inc. v Department of Info. Tech. & Telecom. of City of N.Y.,* 5 NY3d 30; *Matter of Essex County v Zagata,* 91 NY2d 447; *Matter of Save the Pine Bush v City of Albany,* 70 NY2d 193; *Matter of Long Is. Pine Barrens Socy. v Planning Bd. of Town of Brookhaven,* 78 NY2d 608; *Matter of Young v Board of Trustees of Vil. of Blasdell,* 89 NY2d 846; *Matter of Haggerty v Planning Bd. of Town of Sand Lake,* 79 NY2d 784; *Stop-The-Barge v Cahill,* 1 NY3d 218; *Matter of City of Saratoga Springs v Zoning Bd. of Appeals of Town of Wilton,* 279 AD2d 756; *Matter of Gordon v Rush,* 100 NY2d 236.) II. The Town Board of the Town of North Greenbush improperly disregarded the legal effect of the protest petition filed in accordance with Town Law § 265. (*Webster Assoc. v Town of Webster,* 119 Misc 2d 533; *208 E. 30th St. Corp. v Town of N. Salem,* 88 AD2d 281; *Matter of Biedermann v Town of Orangetown,* 125 AD2d 465; *Matter of Smidt v McKee,* 262 NY 373.) III. Respondent Town Board of the Town of North Greenbush violated the State Environmental Quality Review Act by failing to require a supplemental environmental impact statement and failing to mitigate cumulative adverse traffic impacts. (*Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d 400; *Matter of Town of Henrietta v Department of Envtl. Conservation of State of N.Y.,* 76 AD2d 215.)

*Joshua A. Sabo, Town Attorney,* Wynantskill, for Town Board of the Town of North Greenbush, respondent. I. Petitioners' State Environmental Quality Review Act challenge is not time-barred. (*Stop-The-Barge v Cahill,* 1 NY3d 218; *Matter of Essex County v Zagata,* 91 NY2d 447.) II. Town Law § 265 (1) does

not allow the creation of artificial buffer zones to prevent the filing of supermajority protest petitions. (*Lawrence Constr. Corp. v State of New York,* 293 NY 634; *Matter of Tall Trees Constr. Corp. v Zoning Bd. of Appeals of Town of Huntington,* 97 NY2d 86; *Rosner v Metropolitan Prop. & Liab. Ins. Co.,* 96 NY2d 475; *Majewski v Broadalbin-Perth Cent. School Dist.,* 91 NY2d 577.)

*Mandel Clemente, P.C.,* North Greenbush (*Linda A. Mandel Clemente* of counsel), and *Young, Sommer, Ward, Ritzenberg, Baker & Moore, LLC,* Albany (*David C. Brennan* of counsel), for Planning Board of the Town of North Greenbush, respondent. I. Petitioners' State Environmental Quality Review Act claims are barred by the applicable statute of limitations. (*Stop-The-Barge v Cahill,* 1 NY3d 218; *Matter of Essex County v Zagata,* 91 NY2d 447; *Matter of McNeill v Town Bd. of Town of Ithaca,* 260 AD2d 829; *Matter of City of Saratoga Springs v Zoning Bd. of Appeals of Town of Wilton,* 279 AD2d 756; *Town of Red Hook v Dutchess County Resource Recovery Agency,* 146 Misc 2d 723.) II. Petitioners have failed to name necessary and indispensable parties. (*Matter of Manupella v Troy City Zoning Bd. of Appeals,* 272 AD2d 761; *Matter of Amodeo v Town Bd. of Town of Marlborough,* 249 AD2d 882; *Matter of O'Connell v Zoning Bd. of Appeals of Town of New Scotland,* 267 AD2d 742, 94 NY2d 938; *Matter of Van Derwerker v Village of Kinderhook Zoning Bd. of Appeals,* 295 AD2d 676; *Matter of Llana v Town of Pittstown,* 245 AD2d 968, 91 NY2d 812; *Sisters of Resurrection, N.Y. v Country Horizons,* 257 AD2d 729; *Matter of Basha Kill Area Assn. v Town Bd. of Town of Mamakating,* 302 AD2d 662; *Matter of Chalian v Malone,* 307 AD2d 619; *Matter of Cassidy v New York City Dept. of Correction,* 95 AD2d 733; *Matter of Martin v Ronan,* 47 NY2d 486.) III. The lower court erred in granting a preliminary injunction. (*Doe v Axelrod,* 73 NY2d 748; *Peterson v Corbin,* 275 AD2d 35, 95 NY2d 919; *J.S. Anand Corp. v Aviel Enters.,* 148 AD2d 496; *Board of Mgrs., Artist Lake Condominium v Rios,* 166 Misc 2d 381; *Armbruster v Gipp,* 103 AD2d 1014.) IV. The lower court erred in failing to disqualify petitioners' counsel as disqualification is mandatory under Code of Professional Responsibility DR 5-108 (a) and DR 5-105 (d) (22 NYCRR 1200.27 [a]; 1200.24 [d]). (*Kassis v Teacher's Ins. & Annuity Assn.,* 93 NY2d 611; *Cardinale v Golinello,* 43 NY2d 288; *Solow v Grace & Co.,* 83 NY2d 303.)

*Stockli Greene & Slevin, LLP,* Albany (*Mary Elizabeth Slevin* of counsel), for John Gallogly and another, respondents. I. Petitioners' claims under the State Environmental Quality

Review Act must be dismissed as barred by the statute of limitations. (*Stop-The-Barge v Cahill*, 1 NY3d 218; *Matter of McNeill v Town Bd. of Town of Ithaca*, 260 AD2d 829; *Matter of City of Saratoga Springs v Zoning Bd. of Appeals of Town of Wilton*, 279 AD2d 756; *Matter of Young v Board of Trustees of Vil. of Blasdell*, 89 NY2d 846; *Matter of Long Is. Pine Barrens Socy. v Planning Bd. of Town of Brookhaven*, 78 NY2d 608; *Matter of Village of Westbury v Department of Transp. of State of N.Y.*, 75 NY2d 62; *Matter of Sterling Basin Neighborhood Assn. v Planning Bd. of Vil. of Greenport*, 10 Misc 3d 1069[A], 2005 NY Slip Op 52192[U]; *Matter of Long Is. Contractors' Assn. v Town of Riverhead*, 17 AD3d 590; *Matter of Metropolitan Museum Historic Dist. Coalition v De Montebello*, 3 Misc 3d 1109[A], 2004 NY Slip Op 50527[U], 20 AD3d 28.) II. This proceeding should be dismissed for failure to timely join Albany Associates, Cumberland Farms, and Van Rensselaer Square, LLC, all necessary parties. (*Matter of Defreestville Area Neighborhood Assn., Inc. v Planning Bd. of Town of N. Greenbush*, 16 AD3d 715; *Matter of Marin v Board of Elections of State of N.Y.*, 111 AD2d 489; *Mondello v New York Blood Ctr.— Greater N.Y. Blood Program*, 80 NY2d 219; *Matter of Basha Kill Area Assn. v Town Bd. of Town of Mamakating*, 302 AD2d 662; *Matter of Spence v Cahill*, 300 AD2d 992; *Matter of Chalian v Malone*, 307 AD2d 619; *Matter of Cuyle v Town Bd. of Town of Oxford*, 301 AD2d 838; *Matter of Amodeo v Town Bd. of Town of Marlborough*, 249 AD2d 882; *Matter of Manupella v Troy City Zoning Bd. of Appeals*, 272 AD2d 761; *Matter of Save the Woods & Wetlands Assn. v Village of New Paltz Planning Bd.*, 296 AD2d 679.) III. Petitioners did not present a valid protest petition. (*Ryan Homes, Inc. v Town Bd. of Town of Mendon*, 7 Misc 3d 709; *Matter of Van Patten v La Porta*, 148 AD2d 858; *Bismark v Incorporated Vil. of Bayville*, 21 AD2d 797; *Matter of Jalowiec v Reile*, 61 Misc 2d 909; *Matter of Biedermann v Town of Orangetown*, 125 AD2d 465; *Matter of Hittl v Buckhout*, 13 Misc 2d 230, 10 AD2d 719; *Webster Assoc. v Town of Webster*, 119 Misc 2d 533; *Matter of Smidt v McKee*, 262 NY 373.) IV. The Town Board of the Town of North Greenbush properly conducted the State Environmental Quality Review Act review for the generic environmental impact statement. (*Matter of Jackson v New York State Urban Dev. Corp.*, 67 NY2d 400; *Matter of Town of Henrietta v Department of Envtl. Conservation of State of N.Y.*, 76 AD2d 215; *Matter of Orchards Assoc. v Planning Bd. of Town of N. Salem*, 114 AD2d 850; *Matter of Merson v McNally*, 90 NY2d 742; *Matter of Byer v Town of Poestenkill*, 232

AD2d 851; *Matter of Argyle Conservation League v Town of Argyle,* 223 AD2d 796; *Matter of Croton Watershed Clean Water Coalition Inc. v Planning Bd. of Town of Southeast,* 5 Misc 3d 1010[A], 2004 NY Slip Op 51312[U]; *Akpan v Koch,* 75 NY2d 561; *Matter of Neville v Koch,* 79 NY2d 416; *Matter of Danyla v Town Bd. of Town of Florida,* 259 AD2d 850.)

*Eliot Spitzer, Attorney General,* Albany (*Caitlin J. Halligan, Daniel Smirlock, Denise Hartman, Peter H. Lehner, John J. Sipos, Lisa M. Burianek* and *Philip M. Bein* of counsel), for State of New York, amicus curiae. I. Appellants' petition was timely because the limitations period ran from the Town Board of Town of North Greenbush's enactment of the rezoning law. (*Matter of Save the Pine Bush v City of Albany,* 70 NY2d 193; *Matter of Young v Board of Trustees of Vil. of Blasdell,* 89 NY2d 846; *Matter of Best Payphones, Inc. v Department of Info. Tech. & Telecom. of City of N.Y.,* 5 NY3d 30; *Matter of Essex County v Zagata,* 91 NY2d 447; *Stop-The-Barge v Cahill,* 1 NY3d 218; *Matter of Town of Yorktown v New York State Dept. of Mental Hygiene,* 59 NY2d 999; *Matter of Long Is. Pine Barrens Socy. v Planning Bd. of Town of Brookhaven,* 78 NY2d 608; *Matter of City of New York [Grand Lafayette Props LLC],* 6 NY3d 540; *Ecology Action v Van Cort,* 99 Misc 2d 664; *Roosevelt Islanders for Responsible Southtown Dev. v Roosevelt Is. Operating Corp.,* 291 AD2d 40.) II. Nothing in *Stop-The-Barge v Cahill* (1 NY3d 218 [2003]) renders appellants' petition untimely. (*Matter of Save the Pine Bush v City of Albany,* 70 NY2d 193; *Matter of Town of Yorktown v New York State Dept. of Mental Hygiene,* 59 NY2d 999; *Matter of Long Is. Pine Barrens Socy. v Planning Bd. of Town of Brookhaven,* 78 NY2d 608; *Matter of Village of Westbury v Department of Transp. of State of N.Y.,* 75 NY2d 62; *Matter of Metropolitan Museum Historic Dist. Coalition v De Montebello,* 20 AD3d 28; *Matter of Essex County v Zagata,* 91 NY2d 447; *Matter of State of N.Y. Northeastern Queens Nature & Historical Preserve Commn. v Flacke,* 89 AD2d 928; *Town of Red Hook v Dutchess County Resource Recovery Agency,* 146 Misc 2d 723; *Village of Skaneateles v Board of Educ. of Skaneateles Cent. School Dist.,* 180 Misc 2d 591; *Matter of Wing v Coyne,* 129 AD2d 213.) III. This Court should clarify the limited reach of *Stop-The-Barge v Cahill* (1 NY3d 218 [2003]). (*Uhlfelder v Weinshall,* 10 Misc 3d 151; *Matter of Sterling Basin Neighborhood Assn. v Planning Bd. of Vil. of Greenport,* 10 Misc 3d 1069[A], 2005 NY Slip Op 52192[U]; *Matter of Monteiro v Town of Colonie,* 158 AD2d 246; *Matter of McNeill v Town Bd. of Town of Ithaca,* 260 AD2d 829; *Matter of Long Is. Contractors' Assn. v*

*Town of Riverhead,* 17 AD3d 590; *Matter of Entergy Nuclear Indian Point 2 v New York State Dept. of Envtl. Conservation,* 3 Misc 3d 1070; *Matter of Kuzma v City of Buffalo,* 11 Misc 3d 1061[A], 2006 NY Slip Op 50338[U]; *Matter of Merson v Mc-Nally,* 90 NY2d 742; *Abrams v Love Canal Area Revitalization Agency,* 134 AD2d 885.)

### OPINION OF THE COURT

R.S. SMITH, J.

The Town of North Greenbush has rezoned a large area of land to permit retail development. Petitioners seek to annul the rezoning. The case raises these three issues:

1. Did the rezoning require a three-fourths majority vote of the Town Board under Town Law § 265 (1)? We hold that it did not, because the petition that sought to require a supermajority vote was not signed, as section 265 (1) requires, by the owners of 20% of the land within 100 feet of the land included in the rezoning. The 100 feet must be measured from the boundary of the rezoned area, not from the boundary line of the property in which the rezoned area is located.

2. Was petitioners' challenge to the rezoning under the State Environmental Quality Review Act (SEQRA) timely brought? We hold that it was, because in this case the statute of limitations ran from the adoption of the rezoning, not from the earlier completion of the SEQRA process.

3. Did the Town comply with SEQRA? We hold that it did.

### Facts and Procedural History

In September 2003, the Town released a draft generic environmental impact statement (DGEIS), prepared pursuant to SEQRA to address a proposed area-wide rezoning of many parcels of land located near the intersection of routes 4 and 43. The rezoning had been requested by landowners, including John and Thomas Gallogly, who wanted to build retail stores on their property. Retail development was not permitted by the then-existing zoning.

The DGEIS is a document of more than 200 pages with lengthy appendices. One section of the document discusses traffic; that section says that an "access management plan" will be needed, but describes only in general terms what the plan will contain. "Access management," as we understand it from the parties' presentations, involves planning for the entry and exit

of traffic on major roads in such a way as to keep interference with traffic flow to a minimum.

After public hearings and written comments, the Town adopted a final generic environmental impact statement (GEIS) on March 25, 2004. Responding to comments urging the development of an access management plan, the Town included such a plan in the final GEIS, proposing to construct several access roads and other improvements, and describing proposed allocations of costs and sources of funding for this construction. The final GEIS did not specify the timing of the proposed improvements.

After another comment period, the Town took the last step in the SEQRA process by adopting a findings statement on April 28, 2004. The findings statement approved a project that included the rezoning of a number of parcels. It described proposed "mitigation measures," including those contained in its access management plan, but said that "[t]he timing of the improvements is beyond the scope of this GEIS," noting that "the Town cannot logistically or accurately determine at this time which parcels will be developed and when."

On May 4, 2004, the Town Board held a public hearing on the proposed zoning change at which petitioners, opponents of the change, presented a protest petition pursuant to Town Law § 265 (1). The petition, if effective, would have required a three-quarters vote of the Town Board to approve the rezoning. Petitioners claim the protest was effective, because it was signed by owners of more than 20% of the land located within 100 feet of the parcels affected by the rezoning, as shown by the Town's tax map. However, not all the land contained in the tax map parcels was affected by the rezoning; some of the land owned by the Galloglys was not rezoned. A "buffer zone" between 200 and 400 feet wide was left between the rezoned portion of the Galloglys' property and the property line. Measuring from the boundary of the rezoned area, the Town determined that petitioners did not own 20% of the land within 100 feet, and that their protest petition was therefore invalid. On May 13, 2004, the Town Board passed the rezoning by a vote of three to two.

On September 10, 2004—more than four months after the SEQRA process was completed, but less than four months after the rezoning was enacted—petitioners began this proceeding under CPLR article 78 against the Town Board, the Planning

Board of the Town and the Galloglys. The petition contained five causes of action, one alleging that the rezoning was not lawfully enacted because it required a supermajority vote and four under SEQRA, two of which have now been abandoned. The remaining SEQRA claims were related to the access management plan in the GEIS. Petitioners asserted that the Town's proposed mitigation efforts were "vague [and] discretionary" and therefore inadequate and that its "proposed changes to the transportation infrastructure" required preparation of a supplemental GEIS.

Supreme Court denied motions to dismiss the proceedings on statute of limitations and necessary-party grounds, and granted petitioners a preliminary injunction. In a later order, Supreme Court granted the article 78 petition and annulled the rezoning on the basis of petitioners' Town Law § 265 (1) claim. The Appellate Division reversed and dismissed the petition, holding that the protest petition was insufficient under Town Law § 265 (1) (b); that petitioners' SEQRA claims were barred by the statute of limitations; and that the SEQRA claims in any event lacked merit. We now affirm the Appellate Division's order, although we disagree with its statute of limitations holding, the first of its two alternative grounds for dismissing the SEQRA claims.

## Discussion

### I

Under Town Law § 265 (1), zoning regulations may be amended "by a simple majority vote of the town board, except that any such amendment shall require the approval of at least three-fourths of the members of the town board" in certain circumstances. Petitioners here rely on Town Law § 265 (1) (b), which requires a supermajority vote where the zoning change is the subject of a written protest presented to the Town Board and signed by "the owners of twenty percent or more of the area of land immediately adjacent to that land included in such proposed change, extending one hundred feet therefrom."

■ We conclude, as did the Appellate Division, that the "one hundred feet" must be measured from the boundary of the rezoned area, not the parcel of which the rezoned area is a part. The language of the statute, on its face, points to that result: "land included in such proposed change" can hardly be read to refer to land to which the proposed zoning change is inapplicable.

Fairness and predictability point in the same direction. The interpretation we adopt is fair, because it makes the power to require a supermajority vote dependent on the distance of one's property from land that will actually be affected by the change. Petitioners complain that this allows landowners who obtain rezoning to insulate themselves against protest petitions by "buffer zoning"—i.e., leaving the zoning of a strip of property unchanged, as occurred with the Galloglys' property here. But we see nothing wrong with this. The whole point of the "one hundred feet" requirement is that, where a buffer of that distance or more exists, neighbors beyond the buffer zone are not entitled to force a supermajority vote. If we adopted petitioners' interpretation, such a vote could be compelled by property owners within 100 feet of the boundary of even a very large parcel—though these owners might be far away from any land that would be rezoned.

The interpretation we adopt also makes the operation of the statute more predictable. We see no reason why the right to compel a supermajority vote should change when the boundaries between parcels change—i.e., when parcels are merged or subdivided. Indeed, in this case, petitioners accuse the Galloglys of deeding property to themselves in order to create two parcels and invalidate the protest petition. Whether that was their original intention or not, the Galloglys now argue, and we agree, that such a reconfiguration of property lines, whether done in good faith or bad faith, should have no impact on the Town Law § 265 (1) (b) issue.

Measurement from the boundary of the rezoned area—so-called "buffer zoning"—has been upheld in a New York Supreme Court case (*Ryan Homes, Inc. v Town Bd. of Town of Mendon*, 7 Misc 3d 709, 712-714 [Sup Ct, Monroe County 2005]) and in several decisions in other states: *Pfaff v City of Lakewood* (712 P2d 1041, 1043 [Colo App 1985]); *Midway Protective League v City of Dallas* (552 SW2d 170, 174 [Tex Ct Civ App 1977]); *St. Bede's Episcopal Church v City of Santa Fe* (85 NM 109, 110, 509 P2d 876, 877 [1973]); *Rodgers v Village of Menomonee Falls* (55 Wis 2d 563, 569-570, 201 NW2d 29, 33 [1972]); and *Heaton v City of Charlotte* (277 NC 506, 525-528, 178 SE2d 352, 364-366 [1971]).

Petitioners rely on *Herrington v County of Peoria* (11 Ill App 3d 7, 295 NE2d 729 [1973]), but that case is distinguishable; it did not involve a statute that required measurement of a distance from the land included in the proposed zoning change.

The statute in *Herrington* provided for a protest petition by "the owners of twenty percent of the frontage directly opposite the frontage proposed to be altered" (11 Ill App 3d at 9, 295 NE2d at 730; *cf.* Town Law § 265 [1] [c]). The holding of *Herrington* is that the purpose of such a statute cannot be avoided by refraining from rezoning a few feet or inches next to the frontage of the rezoned parcel. The *Herrington* court distinguished *Heaton*, the North Carolina case we cited above, saying that the statute in *Heaton* (which resembles Town Law § 265 [1] [b]) "appears to have been considered by the court as a legislative declaration, that 'one hundred feet' was a legally sanctioned buffer or barrier insulating the property from the claims of protesters" (11 Ill App 3d at 13, 295 NE2d at 733). We think that the Illinois court correctly characterized the North Carolina's court's interpretation of its statute, and we interpret our statute in the same way.

## II

■ An article 78 proceeding brought to review a determination by a body or officer "must be commenced within four months after the determination to be reviewed becomes final and binding upon the petitioner" (CPLR 217 [1]). We have held that this time period begins to run when the petitioner has "suffered a concrete injury not amenable to further administrative review and corrective action" (*Matter of City of New York [Grand Lafayette Props. LLC]*, 6 NY3d 540, 548 [2006]; *see also Matter of Best Payphones, Inc. v Department of Info. Tech. & Telecom. of City of N.Y.*, 5 NY3d 30, 34 [2005]). The issue to be decided here is whether petitioners suffered "concrete injury" from the alleged SEQRA violations on April 28, 2004, when the SEQRA process culminated in the issuing of a findings statement, as the Appellate Division held; or on May 13, 2004, when the Town Board enacted the rezoning, as Supreme Court held. We conclude that no concrete injury was inflicted until the rezoning was enacted, and that therefore petitioners' SEQRA claims were timely brought.

In *Matter of Save the Pine Bush v City of Albany* (70 NY2d 193, 200 [1987]), we held "that a proceeding alleging SEQRA violations in the enactment of legislation must be commenced within four months of the date of enactment of the ordinance." The Town Planning Board argues that *Save the Pine Bush* is "no longer good law," and that under *Stop-The-Barge v Cahill* (1 NY3d 218 [2003]) the statute runs from the end of the SEQRA process. *Stop-The-Barge*, however, is distinguishable.

In that case, the petitioners challenged a conditioned negative declaration (CND) issued under SEQRA by the Department of Environmental Protection (DEP), determining that a project for the installation of a power generator on a barge would have no significant adverse impact on the environment. After DEP's issuance of the CND completed the SEQRA process, the proponent of the project obtained an air permit from another agency. We held that a challenge to DEP's determination of no adverse impact must be brought within four months of the CND, not the later issuance of the air permit.

*Stop-The-Barge* does not control this case because it did not involve "the enactment of legislation," as *Save the Pine Bush* did and this case does; and also because in *Stop-The-Barge* the completion of the SEQRA process was the last action taken by the agency whose determination petitioners challenged. Any injury to the petitioner that DEP inflicted was concrete when the CND was issued. It did not depend on the future passage of legislation, and it was not subject to review or corrective action by DEP.

Here, petitioners suffered no concrete injury until the Town Board approved the rezoning. Until that happened, their injury was only contingent; they would have suffered no injury at all if they had succeeded in defeating the rezoning through a valid protest petition, or by persuading one more member of the Town Board to vote their way.

We thus reaffirm the holding of *Save the Pine Bush*, and make clear that an article 78 proceeding brought to annul a zoning change may be commenced within four months of the time the change is adopted. This does not mean that, in every case where a SEQRA process precedes a rezoning, the statute of limitations runs from the latter event, for in some cases it may be the SEQRA process, not the rezoning, that inflicts the injury of which the petitioner complains. This might be a different case if, for example, the Galloglys or others were contending that mitigation measures required by the final GEIS and adopted in the findings statement unlawfully burdened their right to develop their property. In that hypothetical case, the injury complained of would not be a consequence of the rezoning, but of the SEQRA process, and it would make little sense either to require or to permit the person injured to await the enactment of zoning changes before bringing a proceeding. But that is not the case before us: these petitioners are complaining about the zoning change.

We thus agree with Supreme Court on the statute of limitations issue. We also agree with Supreme Court on an issue the Appellate Division did not reach: the necessary-parties defense asserted by the Town and the Galloglys is without merit. We must therefore address the substance of petitioners' surviving SEQRA claims.

### III

Petitioners complain of two alleged SEQRA violations. First, they argue that the Town has not adequately mitigated the adverse effects on traffic, identified in the DGEIS and the final GEIS, that will result from the rezoning. While the final GEIS describes the improvements that the access management plan will entail, petitioners say the Town has "failed to enact the mechanism"—meaning, apparently, that the Town has not committed itself to undertake specific mitigating measures on a firm schedule. Secondly, petitioners argue that the access management plan so changes the proposed action in question that a supplemental environmental impact statement (SEIS) should have been prepared before the rezoning was adopted. In both of these contentions, the petitioners essentially ask us to substitute our judgment for that of the Town's governing body. This we may not do.

Where an agency has followed the procedures required by SEQRA, a court's review of the substance of the agency's determination is limited. The question is "whether the agency identified the relevant areas of environmental concern, took a 'hard look' at them, and made a 'reasoned elaboration' of the basis for its determination" (*Matter of Jackson v New York State Urban Dev. Corp.*, 67 NY2d 400, 417 [1986]). The agency's "substantive obligations under SEQRA must be viewed in light of a rule of reason" and agencies have "considerable latitude in evaluating environmental effects and choosing among alternatives" (*id.*). Also, "[t]he degree of detail with which each alternative must be discussed will . . . vary with the circumstances and nature of each proposal" (*Webster Assoc. v Town of Webster*, 59 NY2d 220, 228 [1983]). Here, the DGEIS, the final GEIS and the findings statement show that the Town took a "hard look" at the traffic problems that could be anticipated from its proposed rezoning. The Town's explanations of its proposed courses of action are well within a rule of reason. Specifically, there is nothing unreasonable about the Town's comment, in its findings statement, that a more precise plan for traffic mitiga-

tion was impractical until the Town could know "which parcels will be developed and when."

The document in question here is a *generic* environmental impact statement. Department of Environmental Conservation regulations permit a GEIS to be used to assess the environmental impacts of "an entire program or plan having wide application or restricting the range of future alternative policies or projects, including new or significant changes to . . . zoning regulations" (6 NYCRR 617.10 [a] [4]). The regulations provide that "[g]eneric EISs may be broader, and more general than site or project specific EISs" (6 NYCRR 617.10 [a]). There is no merit to petitioners' contention that the Town violated SEQRA by failing, as part of approval of an "entire program or plan," to commit with greater specificity to some details of access management.

■ Nor was the Town required under SEQRA to prepare an SEIS before adopting the rezoning. DEC regulations state that, where a GEIS is used, an SEIS must be prepared in connection with a "subsequent proposed action" that was "not addressed or was not adequately addressed" in the GEIS (6 NYCRR 617.10 [d] [4]). But the regulations do not say or imply that every possible subsequent action must be analyzed in an SEIS before a "program or plan having wide application" is adopted. It was for the Town to decide, subject to a rule of reason, how detailed an analysis to perform, before rezoning was enacted, of all projects that might result from it. The Town's decision that the analysis in its final GEIS was adequate was not arbitrary and capricious.

## IV

Accordingly, the order of the Appellate Division should be affirmed, with costs.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK, ROSENBLATT and GRAFFEO concur; Judge READ taking no part.

Order affirmed, with costs.